UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Number: 06-340 (ESH) |
| v. | |
| MARILYN M. ESSEX, | VIOLATION: 18 U.S.C. §2314 (Interstate Transportation of Stolen Property) |
| Defendant. | |

FILED

FEB 0 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Crim. P. 11, the defendant, Marilyn M. Essex, under penalty of perjury, agrees and stipulates, to the following facts in connection with her plea of guilty to one count of 18 U.S.C. §2314 (Interstate Transportation of Stolen Property).

### Background

The defendant, Marilyn M. Essex ("Essex"), was employed by MDB Communications as the account controller for MDB from 1999, until approximately February 8, 2005. MDB Communications ("MDB"), located at 1050 17th Street, N.W., Suite 500 in Washington, D.C., is an independent, full service advertising, marketing and public relations firm. As account controller, Essex was responsible for supervising and maintaining internal systems for accounts payable, accounts receivable, payroll, general ledger and financial reports and cash control. In addition, Essex's duties included monitoring bank balances and financial statements, supervising audits and tax reports and preparing preliminary budgets. Essex's official duties also included manually preparing checks for payment of venders, such as publishing companies, employed by MDB.

As part of the operation of MDB, funds were deposited into a checking account MDB maintained at Bank of America (account number XXXXXXXX8654) (hereinafter, "MDB operating account"). Funds would be disbursed from the MDB operating account in the normal course of business for payment of necessary expenses incurred such as the payment of vendors employed by MDB. Cary Hatch ("Hatch"), President and CEO of MDB was the only authorized signatory on the MDB operating account.

Essex resided in Rockville, Maryland and held a checking account (account number XXXX8922) at Crestar Bank which merged into SunTrust Bank in June of 2000 (hereinafter, "SunTrust checking account"). Essex held a personal credit card account with Discover Card (account number XXXX-XXXX-0752-1111) (hereinafter, "Discover Card account"). Essex made payments on the Discover Card account by sending checks by U.S. mail to Discover Card in Wilmington, Delaware.

Bank of America and Crestar Bank were financial institutions insured by the Federal Deposit Insurance Corporation. Crestar Bank merged into SunTrust Bank in June of 2000, which was also a financial institution insured by the Federal Deposit Insurance Corporation.

The Embezzlement

Between from at least June 1999, to in or about February 2005, in the District of Columbia and elsewhere, defendant, MARILYN M. ESSEX, knowingly engaged in a scheme and artifice to defraud MDB Communications whereby she wrongfully obtained money belonging to and under the custody and control of MDB Communications which she appropriated for her own use or transported said monies in interstate commerce for the benefit of a third party.

## Manner and Means

Shortly after beginning her employment in 1999, as account controller for MDB, Essex began manually preparing and signing checks written on the MDB operating account which she made payable to herself or to her personal Discover Card account. Essex negotiated the stolen checks that she had made payable to herself and deposited stolen funds from the MDB operating account into her SunTrust Bank account. In addition, Essex made some of the stolen checks payable to "Discover Platinum Card" which she sent via U.S. mail to Discover Financial Services in Wilmington, Delaware for the purpose of paying her personal Discover Card account. This activity was unknown and unauthorized by her employer, MDB. Moreover, Essex took steps to hide the existence of the embezzlement from her employer including intercepting and destroying the returned checks.

On February 7, 2005, Hatch discovered an MDB business check made payable to Marilyn Essex in the amount of approximately $2,000, in the area of Essex's workspace. Hatch noticed that the check was signed with Hatch's name. However, the signature was not Hatch's and the check had not been authorized. Essex was not working on February 7, 2005, and not present at MDB office. When Essex reported to work the following day, Hatch confronted Essex with the fraudulent check she had found the day before and demanded an explanation. Essex then admitted that she had been falsifying MDB checks for approximately one year and had stolen approximately $100,000. Hatch then requested that Essex memorialize her admission in writing. Essex subsequently drafted a handwritten note on MDB stationary in which she admitted that she "committed fraud by falsifying checks." In that same note, Essex also wrote that she resigned effective February 8, 2005. Following that meeting, Hatch contacted law enforcement authorities who began an investigation into the fraud. Because of

the fraudulent scheme executed by Essex, MDB Communications suffered an actual loss in excess of $656,000. In addition, as a consequence of the illegal acts of Essex, MDB has incurred sizable financial obligations to lawyers, accountants and others who investigated the loss occasioned by Essex's illicit conduct or attempted to mitigate the financial effects of such loss to MDB.

Date: 11-16-06

MARILYN M. ESSEX
Defendant

    I have read each of the four pages constituting this statement of offense and reviewed and discussed them with my client.

Date: 11-16-06

DAVID SCHERTLER, ESQUIRE
Attorney for the Defendant

4